Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward J. Davila, Judge

IN RE:  APPLE INC. APP STORE      )
SIMULATED CASINO-STYLE GAMES      )   **NO. C 21-md-02985 EJD**
LITIGATION                        )
                                  )
_____    )

San Jose, California
Tuesday, June 29, 2021

**TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**: (Appearances via Zoom.)

For Plaintiffs:

                        EDELSON PC
                        150 California Street, 18th Floor
                        San Francisco, California 94111
                  BY:   **RAFEY S. BALABANIAN, ATTORNEY AT LAW**
                        **TODD M. LOGAN, ATTORNEY AT LAW**

                        TYCKO & ZAVAREEI LLP
                        1828 L Street, N.W., Suite 1000
                        Washington, D.C. 20036
                  BY:   **ANDREA R. GOLD, ATTORNEY AT LAW**

                        DAVIS & NORRIS, LLP
                        2154 Highland Avenue, Suite 4002
                        Birmingham, Alabama 35205
                  BY:   **JOHN E. NORRIS, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported Remotely By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
                       Official Reporter, CSR No. 12219

1   **APPEARANCES**:   (Appearances via Zoom.)   (CONTINUED)

2   For Defendant:

3                               DLA PIPER LLP (US)
                                2000 Avenue of the Stars
                                North Tower, Suite 400
4                               Los Angeles, California 90067
                        BY:   **JOHN S. GIBSON, ATTORNEY AT LAW**
5

6                               DLA PIPER LLP (US)
                                401 B Street, Suite 1700
                                San Diego, California 92101
7                       BY:   **BROOKE K. KIM, ATTORNEY AT LAW**

8                               DLA PIPER LLP (US)
                                555 Mission Street, Suite 2400
9                               San Francisco, California 94105
                        BY:   **EVA K. SCHUELLER, ATTORNEY AT LAW**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**Tuesday - June 29, 2021**</u>                                    <u>**10:09 a.m.**</u>

**P R O C E E D I N G S**

---o0o---

    **THE COURT:**  Thank you.  Good morning, everyone.  Thank you for your patience.

    Let's call 21-md-2985.  This is In Re:  Apple Inc. Apple Simulated Casino Games Litigation, and this is a remote CMC hearing.

    Let me first capture appearances of the parties.  And let's see who appears for plaintiff this morning, please.

    **MR. BALABANIAN:**  Good morning, Your Honor.  I'm Rafey Balabanian of Edelson PC, appearing on behalf of the plaintiffs.  I'm also joined by my partner Todd Logan, also of Edelson PC, and our co-counsel as well.  Good morning.

    **THE COURT:**  Thank you.  Good morning.  Good morning, both of you.

    And who appears for the defense in this case?

    **MR. GIBSON:**  Good morning, Your Honor.  John Gibson of DLA Piper appearing for the defendant Apple Inc.  With me are my colleagues Brooke Kim and also Eva Schueller.

    **THE COURT:**  Thank you.  Good morning.

    And who else do we have on the line?

    **MR. NORRIS:**  Your Honor, this is John E. Norris.  I'm also with the plaintiffs, representing the individual plaintiffs in the individual original statewide class actions

1    that were transferred.

2          **THE COURT:**  All right.  Thank you, sir.  Good morning

3    to you.

4          **MS. GOLD:**  And good morning, Your Honor.  This is

5    Andrea Gold of Tycko & Zavareei, representing certain

6    plaintiffs in the Lowe, Hoose, and McDonald actions.

7          **THE COURT:**  Thank you.  Good morning to you.

8        This is the CMC we set after our previous hearing.  I

9    think it was in May.

10       I have read and reviewed Document 28, which is your

11   statement.  I understand something was filed as recently as a

12   few hours ago, yesterday.

13       And, Mr. Balabanian, maybe you can talk to us about that.

14         **MR. BALABANIAN:**  Thank you, Your Honor.  I'd be happy

15   to.

16       Yeah, I'm pleased to report, Your Honor, that we actually

17   made good progress from the last CMC.  I had advised the Court

18   that I thought we would have an agreed motion for appointment

19   of interim lead to present to the Court.  I'm very pleased to

20   say that we did come to an agreement amongst all the

21   plaintiffs' counsel on self-ordering; of course, subject to

22   the Court's approval.

23       And we did file that motion for consolidation and interim

24   lead counsel yesterday.  And I'm sorry we didn't get it on file

25   a little sooner to give the Court a little more time with it,

1    but it is on file.

2          **THE COURT:**  That's wonderful.  Thank you.

3          And I think that's what we had talked about doing.  I

4    think that there is a date set for that motion as of

5    August 12th, is it, Ms. Kratzmann?

6          **THE CLERK:**  Yes, Your Honor, August 12 at 9:00 a.m.

7          **THE COURT:**  All right.  First of all, should we keep

8    that date, Counsel?  Is there anyone who feels we need to

9    disrupt or disturb that date for any reason?

10          **MR. GIBSON:**  Yes, Your Honor.

11          So I think we need -- we will need some more time to brief

12    this.

13          Just as background, Your Honor, we are -- I guess I would

14    say that Apple is incredulous of the consolidation aspect of

15    the motion for several reasons, the lead reason being that

16    counsel did not meet and confer with us about consolidation

17    and -- before filing this motion that was filed, I believe,

18    last night before midnight, shortly before midnight.

19          Second reason is it's an apparent end run around the joint

20    panel and multidistrict litigations order last month in the

21    Google cases and -- where the transfer order was very clear

22    that plaintiffs were attempting to consolidate the Google

23    actions with this Apple MDL, and the JPML denied that in

24    transferring the Google cases to Your Honor.

25          I can go into that a little bit, if Your Honor would like.

1          Third reason is this consolidation is just exactly,

2     Your Honor, what the plaintiffs stated they would not seek in

3     their filing about ten days ago and their motion to relate

4     cases.  And so this was quite a surprise to us.  I woke up to

5     this earlier this morning and had no idea it was coming.

6          And then I would say also that the complaints, the Apple

7     plaintiffs' complaints go into some detail in distinguishing

8     the platforms between Facebook and Google and Apple.  And in

9     those distinctions -- which we can go into a little bit here if

10    you would like to, Your Honor, but certainly will address those

11    in our opposition to the motion -- really weigh heavily against

12    consolidation.

13         And so we were surprised.  We didn't know it was coming.

14    We were not prepared for it.  And for good reason, we thought

15    just the opposite was coming, an agreement to not consolidate

16    and to simply relate cases before Your Honor.

17         So we would like some more time.  And given vacation

18    schedules that have already been set for July, we would

19    certainly like two more weeks than has been allotted to us by

20    the plaintiffs unilaterally here.

21         So I think the opposition date the plaintiffs set is --

22    I believe it was July 12.  And so we would like two more weeks

23    on that, July 26th, which, of course, would move -- may move

24    the hearing date back to give Your Honor some time to,

25    obviously, review the opposition and reply.  But, of course,

1    we're open.  Whatever is suitable and convenient for the Court

2    would work for us.

3         **THE COURT:**  All right.  Well, thank you.  I appreciate

4    that, Mr. Gibson.

5         I haven't pored through the filing, Mr. Balabanian, as you

6    noted, thoroughly.  But I do note that the cases are

7    interesting in that there are cases -- and I'm trying to use

8    language carefully here -- that have related type of actions.

9         And it seems at a high level, there's some efficiencies

10   captured by keeping cases at least related somehow together so

11   the Court and counsel can manage discovery issues, depos, and

12   those types of things.  That's always something that benefits

13   all of us.

14        And then, of course, the term "relation" also has some

15   context with consolidation.  And what does that mean when we

16   consolidate cases?  And does that change, and how does that

17   change, the nature, character, and quality of how the

18   litigation transpires?  That's a whole separate matter.

19        I think when the cases were sent to me, my recollection is

20   that the panel left it to the Court's discretion as to how to

21   handle those other cases and how best -- and I appreciate their

22   confidence in counsel and the Court -- to fashion some type of

23   method that we can handle both all of the cases in an efficient

24   manner in keeping with the spirit of the MDL and even those

25   case that aren't under, specifically, the MDL umbrella.

1    So I understand the spirit of why the motion was filed and

2  titled the way it was.  I think, Mr. Gibson, to give your

3  colleague opposite the benefit of the doubt, perhaps their

4  feeling was that's the best way to capture that.

5    But I understand also your feeling that "Wait a minute.  I

6  think the cart is well in front of the horse now and down the

7  hill.  So we need to slow things down and regroup here."  And I

8  certainly understand that.

9    Mr. Balabanian, what are your thoughts about Mr. Gibson's

10  request for a couple of weeks and then adjustment in the

11  hearing?

12    **MR. BALABANIAN:**  Thank you, Your Honor.

13    I have no -- we have no problem with that, Your Honor.

14    If I could just add one minor point in response to what

15  Mr. Gibson said, because I do appreciate his concern.  I think

16  the Court is right that the MDL panel did leave it to

17  Your Honor and the parties to sort of craft the right approach

18  here.

19    But one thing that I think I might be able to clarify or

20  allay some of the concerns is, we're not seeking to consolidate

21  all of the cases into one giant, you know, mishmash of all the

22  cases pending against the platform providers.

23    What we are seeking in terms of consolidation, Your Honor,

24  is to consolidate the cases relative to each platform.  So the

25  MDL panel did send the Apple cases and the Google cases to

1   Your Honor.

2       There are several cases pending against Apple and Google

3   that have been filed by the various plaintiffs' counsel.  And

4   on that point, I do think there is probably little question

5   that there are serious efficiencies to be gained by at least

6   consolidating the cases that are pending against Apple itself

7   and Google, and so on and so forth.

8       They have all been sent to Your Honor.  We do have pending

9   a motion to relate the two Facebook cases that are out there,

10  and that's kind of a separate issue.  But the cases are pending

11  in front of Your Honor.  So I do think that on the

12  consolidation point, there might be a little bit of confusion

13  here as to what we were hoping to accomplish.

14      And I'm disappointed to hear that counsel feels as though

15  we didn't meet and confer sufficiently.  And I would just

16  represent to the Court that we will do our very, very best

17  going forward to make sure that that's not a recurring feeling

18  on the part of anybody.

19      **THE COURT:**  Thank you.  I appreciate that, as does

20  Mr. Gibson, I'm sure.

21      And when I read Document 28, I think I could understand

22  Mr. Gibson's expression when his second point was he

23  references, I think, plaintiffs using the plural in talking

24  about pleadings, and his curiosity was piqued as to:  Are there

25  going to be multiple pleadings or a master?  Are there going to

1    be several master pleadings, or are we going to have one

2    pleading that rules all, the ring of rings of pleadings here,

3    as opposed to several rings throughout?

4        Sorry for the Tolkien reference.

5        I think that's what Mr. Gibson was trying to capture here.

6    And I'd appreciate that as well, knowing what the landscape of

7    that is going to be.  And I don't know if you can comment on

8    that now, but perhaps that's something that the pleadings would

9    bear out.

10       **MR. BALABANIAN:**  Well, I do think that that is going

11   to be an issue that we have to tackle, Your Honor.  This -- the

12   cases -- there are plaintiffs who are alleging nationwide class

13   based on California law.  There are also many plaintiffs who

14   have alleged state action -- claims under the various state

15   laws.  I think we've got about 20-plus or 25-plus state law

16   claims.

17       So I think we're going to have to do some hard work with

18   respect to how best to frame the pleadings, whether there is a

19   master complaint that covers a nationwide class on behalf of

20   certain plaintiffs but then also covers the various statewide

21   classes that the other plaintiffs are asserting, or whether

22   kind of those two categories of classes should proceed in

23   separate complaints.

24       We haven't come to a complete determination on our side as

25   to what the appropriate approach is, Your Honor.  But as

 1   the Court might imagine, there is a lot to unpack here in terms

 2   of all the claims and the various state laws that are at play

 3   and then how that intersects with the nationwide aspect of this

 4   case.

 5       So I certainly understand that hearing "pleadings" is a

 6   bit unnerving, I suppose, but it is a function of all the

 7   various claims and plaintiffs that are part of this -- I

 8   shouldn't say "consolidating" -- this MDL proceeding, Your

 9   Honor.

10       **THE COURT:**  All right.  Thank you very much.

11       Mr. Gibson, anything you want to add here?  And next,

12   after that, I'll ask you what your thoughts are on next steps.

13   Mr. Gibson?

14       **MR. GIBSON:**  Thank you, Your Honor.

15       So I think, first of all, before I throw it over to

16   Ms. Kim, who is ready to talk about some of these issues in

17   more depth, I think there is an issue about whether plaintiffs

18   are contemplating a single consolidated complaint against Apple

19   or multiple complaints against Apple, setting aside Google and

20   Facebook.

21       And so we'll have an opportunity, I know, to brief that;

22   and so I just wanted to call that to Your Honor's attention

23   because, again, we haven't thoroughly met and conferred on that

24   issue.

25       And I think I'll, if I may, pass the baton to Ms. Kim,

1    Your Honor.

2              **THE COURT:**  All right.  Thank you.

3              **MR. GIBSON:**  And she can speak to some of the other

4    issues.

5              **THE COURT:**  All right.  And, thank you.

6         Ms. Kim, good morning.

7              **MS. KIM:**  Good morning, Your Honor, and thank you.

8         In terms of next steps, Apple thinks there are at least

9    two gating issues that we need to consider at the outset.

10        Apple is very concerned about the reference to multiple

11   pleadings.  While we are familiar with cases where you might

12   have two kinds of plaintiffs with a separate complaint, such as

13   in an antitrust action you might have direct purchasers and

14   indirect purchasers, what we have not seen is a complaint that

15   purports to have, you know, two separate complaints

16   representing the same plaintiffs.  And that's what we're afraid

17   is happening here.

18        I also note that, you know, looking, however briefly, at

19   the leadership structure and the fact that that came in late

20   last night, that there may be some, you know, reading some tea

21   leaves here.  Looking at how different these complaints are,

22   there may be some issues intertwined with the leadership motion

23   that we need to deal with on the complaints, because those two

24   things do appear to -- there's some negotiations that appears

25   to be going on behind the scenes that, you know, could impact

both the leadership structure and the complaints.  So I think,
you know, finding out what this complaint will look like is
going to be critical to setting any future dates.

     I note Mr. Balabanian noted, you know, that there is a
choice of law issue that he might have to divide into two
complaints.  That's going to impact what kind of briefing we
have to do.  We know that some of these plaintiffs are seeking
a nationwide class, while some have state law classes.  Who are
going to be the class reps?  That will depend on whether there
is an issue with standing.  What developers and apps will be at
issue?

     These two complaints -- there are two different sets of
tacts the plaintiffs have taken, one involving a complaint as
to all app developers, and one involving complaints as to very
narrowly defined app developers.  That issue could determine
whether, you know, there is a -- a motion to compel arbitration
that lies.

     So the complaint is -- it's an absolute necessity that we
get that settled, and I think that's the first issue we need to
focus on.

     There is a second gating issue before setting up a
schedule relating to discovery.  As we mentioned on our last
CMC, Your Honor has previously held that discovery should be
stayed in cases where defendant is asserting immunity or the
plaintiff is advancing a RICO claim.  That's the *Onuoha* case

1    and the *Malley* case we talked about last time.

2        This, to Apple, is a very simple issue to tee up.  We

3    think it should be teed up before our next CMC, and it will

4    give the parties some sense of what the next steps will be and

5    what they should be focused on.

6        We're prepared to present Your Honor with a motion on that

7    in the next week or two and would happily have that briefed

8    before the next CMC.

9        **THE COURT:**  All right.  Thank you.  Thank you very

10   much, Ms. Kim.  I appreciate that.

11       Mr. Norris, Ms. Gold, anything you want to add here?

12       **MR. NORRIS:**  Not at this time, Your Honor.

13       **THE COURT:**  All right.  Thank you.

14       Ms. Gold?

15       **MS. GOLD:**  No, Your Honor, not now.  Thank you.

16       **THE COURT:**  Thank you.

17       Well, first of all, what I would like to do, just in a --

18   and I hope you'll pardon me for being so basic and elementary

19   here, but I think it is critical for a case of this size.  It's

20   a fascinating case.  The issues are intriguing, and we're all

21   curious about them and what the law says about these issues.

22       I think it would be best for the Court to craft as solid a

23   foundation as we can and then allow you to build on it, build a

24   litigation on that foundation so we don't have to go back and

25   try to repair things.

1        And it seems to me that the first step in that would be

2   to -- first of all, I appreciate, Mr. Balabanian, your

3   consideration in allowing additional time for Mr. Gibson's team

4   to file responses to your pleadings.

5        And is two weeks sufficient, Ms. Kim, Mr. Gibson?  Is

6   that -- I appreciate your looking at that.  Is two enough?  Is

7   three better?  Can you get this done?

8        I'm asking that because I want to make sure.  You said

9   vacation schedules and all that.  You know, in firms,

10  "vacation" is a word that's seldom used.  But I just want to

11  make sure you can get things on file appropriately.

12          **MR. GIBSON:**  Thank you, Your Honor.

13       With respect to opposing -- responding to the motion to

14  consolidate and leadership?

15          **THE COURT:**  Yes.

16          **MR. GIBSON:**  So, Your Honor, we had in mind two extra

17  weeks, two weeks beyond the current July 12th date set by the

18  plaintiffs.  So that would be July 26th.

19          **THE COURT:**  Yes.

20          **MR. GIBSON:**  I think that would be enough.  I think we

21  have some critical members who are on vacation through, I

22  think -- who come back, I think it's July 19th.  So it would

23  give us at least another week to do that.

24          **THE COURT:**  Well, they will happily return.

25       Okay.  What does that do, then, to our hearing date, then,

 1   Ms. Kratzmann?  It seems like we would need to move that down.

 2       And, Mr. Balabanian, I don't know if you want to file

 3   something in response, a reply of some sort.

 4          **MR. BALABANIAN:**  I think probably we will, Your Honor.

 5       And maybe we could just have a week to do something, do a

 6   reply brief.  I think that should be sufficient --

 7          **THE COURT:**  Okay.

 8          **MR. BALABANIAN:**  -- if that works for the Court.

 9          **THE COURT:**  I think it will.  Of course, I don't have

10   the calendar in front of me.

11          **THE CLERK:**  If the opposition is due July 26, that's a

12   Monday, then a week would be August 2nd, Your Honor, for the

13   reply.

14          **THE COURT:**  Okay.  And then?

15          **THE CLERK:**  The next available hearing date,

16   Your Honor, for these motions would be September 23rd at

17   9:00 a.m.

18          **THE COURT:**  Oh, dear.  That's it?  Is there --

19   Ms. Kratzmann, I know we didn't look at this.  Is there any way

20   to schedule this on the 9th or the 16th?

21          **THE CLERK:**  Of September, Your Honor?

22          **THE COURT:**  Yes.

23          **THE CLERK:**  Possibly September 9th.  Let me just check

24   one moment.

25       I believe September 9th at 9:00 a.m.

1          **THE COURT:**  That may be a difficult week for us.

2     We'll hopefully be starting a criminal trial that week, but

3     Thursday we'll have reserved.

4          **THE CLERK:**  The 16th -- I don't think you want to set

5     it on the 16th.

6          **THE COURT:**  Okay.  Oh, dear.  The 23rd is -- what time

7     would that be, Ms. Kratzmann?

8          **THE CLERK:**  At 9:00 a.m., Your Honor.

9          **THE COURT:**  I'm hesitating as I'm looking at our

10    calendar, and I show that we have our court retreat that

11    Wednesday, Thursday, Friday, and I would sure like to be there

12    to support our new chief judge.

13        Is there any other way we could get this in,

14    Ms. Kratzmann?  I'm sorry to have you do this on the fly, but I

15    would like to see if we can capture some kind of a --

16         **THE CLERK:**  Your Honor, if you would like the 16th,

17    we'll make the 16th happen.

18         **THE COURT:**  We'll have to move some things and --

19         **THE CLERK:**  We can make adjustments, Your Honor, but

20    we'll make the 16th happen, yes.  That could be set at

21    9:00 a.m., September 16th at 9:00 a.m.

22         **THE COURT:**  Does that work for folks?

23         **MR. BALABANIAN:**  Absolutely, Your Honor.  We'll make

24    that work.

25         **THE COURT:**  Let's make that -- we'll disappoint some

 1   other folks and move their cases.

 2        Thank you, folks.  Let's use the 16th as a hearing date.

 3             **MR. BALABANIAN:**  We appreciate that, Your Honor.

 4             **MR. GIBSON:**  Thank you, Your Honor.

 5             **THE COURT:**  You're welcome.

 6        Okay.  So what should we do about the other issues?  It

 7   seems to me that perhaps the thing to do is to hear this

 8   motion, see what the result of this motion is before I do any

 9   scheduling.  It seems to me that that makes sense.

10        And let me say, Mr. Balabanian, when I read the two --

11   your two proposals in Document 28, I think that Apple's

12   proposal is one that I'd probably like to lean on a little

13   more.  That is, your proposal is to allow you to meet and

14   confer and get a schedule.  I think it's -- I'm going to have

15   you do that, of course; but I think it's premature to do that

16   now.  I'd like to have this motion heard, and then maybe see

17   what the landscape looks like then, and then see if I can allow

18   you to meet and confer about a schedule.

19        Ms. Kim's, you know, gating issues, I think, can be

20   discussed as well, I think, and I appreciate you raising those

21   for all of us to be thinking about.

22             **MR. BALABANIAN:**  Understood, Your Honor.  Thank you.

23             **THE COURT:**  All right.  What else do we need to do

24   this morning?

25             **MR. BALABANIAN:**  One other, I would call it a

housekeeping matter, I think, Your Honor, but I'm not sure

the Court will view it that way.

We do have the motion to relate the Facebook cases out

there pending.  I don't believe there was any substantive

objection to that motion.  I think there might have been

objection to calling the cases related, but I'm not sure where

that line -- where that falls in terms of substantive versus

procedural.  But that's the one thing that's pending out there

that might just get the cases all on the same track.

**THE COURT:**  Sure.

Does anybody on this call wish to speak to that?  Anyone

have an opinion on that?

**MR. GIBSON:**  Your Honor, John Gibson.

I would just say, for Apple, we filed a position paper,

and that is our position.  We certainly do not object to having

the Facebook cases reassigned to Your Honor.  Of course we

would welcome that.  And -- however, we are not -- we do not

express a position on whether or not the cases are related.

But what we did express a strong position on is that there

should not be substantive consolidation of the Facebook cases

with the Apple MDL.

And for that reason, Your Honor, I'm wondering if we

shouldn't discuss, at the September hearing, the consolidation

motion first and then figure out what is what, and what are all

the cases that Your Honor will have in front of you, and how we

1    should administer those.

2         **THE COURT:**  Mr. Balabanian?

3         **MR. BALABANIAN:**  Yes.  Thank you, Your Honor.

4    I guess my only point would be that consolidation is a

5    separate issue.  And so I think reassignment to Your Honor

6    makes sense completely because the cases are all alleging the

7    same types of legal theories, of course, against the various

8    platform providers.  Whether or not it's consolidated I think

9    is a completely separate issue from whether or not it should be

10   reassigned to this Court.

11        **THE COURT:**  Right.  And I look at those cases, and it

12   seems to me that -- I'm not making a ruling here.  Just

13   expressing a high-level opinion.  It seems like those --

14   relation would not be inappropriate to have those cases in

15   front of me, and -- for whatever reason.  And that's not to say

16   that that is a stepping-stone to consolidation.  Those are two

17   separate things, as you suggest.

18        But relation allows the cases to be here because they are

19   similar, again, to capture efficiencies; and that's really what

20   that's an expression of; and I can certainly see the value in

21   that.

22        But that's not just for your friends on the defense.

23   That's not a stepping-stone to consolidation.  It's just a

24   recognition that, candidly, that's how things are done and

25   that's how the rules allow us to capture efficiencies in the

 1  litigation.  And I would like to do that in this case.

 2      So I'm not adverse to having them related.  I understand

 3  the defense expression of "Well, that's not a finding of

 4  consolidation."  And it isn't.  It isn't.

 5      So that's what I'll say on that, if that's helpful.

 6      MR. GIBSON:  Yes.  Thank you, Your Honor.  We

 7  appreciate that.

 8      THE COURT:  And if that's not opaque enough for you, I

 9  can certainly blur it more.

10      MR. GIBSON:  That's perfectly clear.  Thank you.

11      THE COURT:  What else should we do, then,

12  Mr. Balabanian?

13      MR. BALABANIAN:  I don't think I have anything else,

14  except I just wanted to be clear on -- in my head.

15      Should we expect a motion for a protective order to stay

16  discovery within the next week?  That's the only thing I think

17  was mentioned that I'm not quite certain about or clear on.

18      THE COURT:  I don't know if your colleague opposites

19  were going to engage in that now or whether they wish to speak

20  to that.  I know in Document 28, they did talk about some of

21  those issues; not necessarily a protective order, but the stay

22  issue on discovery.

23      But maybe that's something I'll let you meet and confer

24  about.  I don't think that's going to be a controversial issue.

25  If you feel there is some protective order that needs to be put

 1  in place for whatever happens with discovery, maybe it's good

 2  to do that in advance prophylactically.

 3      And then, as to whether or not there is going to be a stay

 4  on discovery, that's a whole separate issue as well, and how do

 5  we do that.

 6          **MR. BALABANIAN:**  That works for me, Your Honor.  I'm

 7  happy to meet and confer about it further.

 8          **MS. KIM:**  As are we, Your Honor.  Thank you.

 9          **THE COURT:**  Terrific.

10      We have our date and time, then, set for the motions and

11  the replies.

12      And did we give a date a week after for the reply?  That's

13  right.

14      And, gosh, I didn't even look at the calendar,

15  Ms. Kratzmann.  How much time does that give us?

16          **THE CLERK:**  Well, Your Honor, if it's set for

17  September 16th, that gives you --

18          **THE COURT:**  That gives us some time, good, because I

19  have the best law clerks in the building.  It's common

20  knowledge.  So we're in good shape.  All right.

21      Anything further then, Mr. Gibson?

22      Ms. Kim?

23          **MR. GIBSON:**  No.  Thank you, Your Honor.

24          **MS. KIM:**  No, Your Honor.  Thank you.

25          **THE COURT:**  Mr. Balabanian, anything further from your

1    team?

2        Mr. Logan?

3        Ms. Schueller?

4            **MR. BALABANIAN:**  Nothing from me, Your Honor.

5            **MR. NORRIS:**  Nothing here, Your Honor.  Thank you.

6            **MS. SCHUELLER:**  No.  Thank you, Your Honor.

7            **THE COURT:**  All right.  Well, enjoy the summer.  Have

8    a celebratory Fourth.  And I know none of you take vacations,

9    but enjoy your weekends, nonetheless, and we'll see you soon.

10   Thank you.

11           **MR. BALABANIAN:**  Thank you, Your Honor.

12           **MS. KIM:**  Thank you.

13           **THE CLERK:**  Court is adjourned.  This webinar shall

14   terminate.

15               (Proceedings adjourned at 10:38 a.m.)

16                         ---o0o---

17

18

19

20

21

22

23

24

25

1

2                    <u>**CERTIFICATE OF REPORTER**</u>

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6    DATE:    Sunday, August 8, 2021

7

8

9

10

11    _____
      Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
12            Official Reporter, U.S. District Court

13

14

15

16

17

18

19

20

21

22

23

24

25